Dear Representative Ron Peters,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. Are the members of the Grand River Dam Authority Lakes Advisory Commission ("Advisory Commission") subject to the policies of the Board of Directors of the Grand River Dam Authority ("GRDA") regarding conflicts of interest and business favoritism with respect to commercial permits, exemptions, and other related matters?
 2. Is the Grand River Dam Authority Lakes Advisory Commission subject to Article I of the Oklahoma Administrative Procedures Act?
 3. Pursuant to Article IV, § 7 of the GRDA's Rules and Regulations Governing the Use of Shorelands and Waters of the Grand River Dam Authority, docks may not exceed a total maximum length, perpendicular to the shoreline, of 125 feet or one-third the distance from the adjacent shoreline, whichever distance is less. Does the GRDA have the authority, express or implied, to grant waivers to this rule and if so, under what circumstances and with what, if any, restrictions?
 I. Grand River Dam Authority Lakes Advisory Commission — Conflicts Of Interest
¶ 1 You first ask whether members of the Advisory Commission are subject to the same conflict of interest policies as the members of the GRDA with regard to commercial permits, exemptions and related matters. The Advisory Commission and the GRDA are separate and distinct legal entities created by statute, each with its own statutory functions; the Advisory Commission is not a subordinate entity of the GRDA. See 82 O.S. 2001, §§ 861-895[82-861-895];63 O.S. 2001, § 4230.1[63-4230.1]. While the GRDA has powers of government, the Advisory Commission is to function as a forum for interested persons to provide input to various governmental bodies regarding lakes under the GRDA's authority, and in addition, is to provide nominations from which the Governor is to make one appointment to the GRDA board. Id. § 4230.1(A), (G);82 O.S. 2001, § 863A[82-863A](B)(5).
¶ 2 The GRDA is a conservation and reclamation district created by statute as "a governmental agency of the State of Oklahoma, body politic and corporate, with powers of government and with the authority to exercise the rights, privileges and functions hereinafter specified, including the control, storing, preservation and distribution of the waters of the Grand River and its tributaries, for irrigation, power and other useful purposes." 82 O.S. 2001, § 861[82-861]. The powers of the GRDA, as enumerated in Section 862, are exercised through a board of nine directors. Id. § 863A(A).[1] The Advisory Commission, on the other hand, was created to "provide a forum for interested persons to address issues related to the environmental concerns, recreational use, and economic development of the lakes under the administration of the Grand River Dam Authority on behalf of all lake enthusiasts, property owners and business persons who use, live or work on or around the lakes." 63 O.S. 2001, §4230.1[63-4230.1](A).[2] Unlike the GRDA, the Advisory Commission has no power to issue permits or perform any of the other powers and duties delegated to the GRDA. Rather, it merely provides a forum for interested persons to address issues relating to the lakes by making recommendations and filing reports with State officials.Id.
¶ 3 The Advisory Commission consists of nineteen members, including four ex officio members and fifteen members appointed by the various local chambers of commerce and associations specified in the statute. Id. § 4230.1(B)(1). Ex officio members include the General Manager of the GRDA, Executive Director of the Department of Tourism and Recreation, Director of the Department of Commerce, and Executive Director of the Department of Environmental Quality. Id. § 4230.1(B)(1)(a)-(d). Members of the Legislature are prohibited from being a member of the Advisory Commission. Id. § 4230.1(B)(2). The Advisory Commission may make recommendations regarding changes in Oklahoma statutes and agency rules, and may file reports with the Governor, the Legislature, the GRDA and the Department of Public Safety Lake Patrol Division. Id. § 4230.1(F). The Advisory Commission is required to submit a list of three names to the Governor from which the Governor is to make one appointment to the GRDA Board of Directors. Id. § 4230.1(G). Staff support for the Advisory Commission is provided by the GRDA. Id. § 4230.1(E).
¶ 4 You provided a copy of the Grand River Dam Authority Boardof Directors Policy Manual 2003, which includes Conflict ofInterest and Business Ethics (hereinafter Policy) for officers and directors of the GRDA. This Policy includes statutory requirements specifically applicable to GRDA board members. See
Policy No. 2-4, § II(A); see also 82 O.S. 2001, § 863A(A) ("[N]o person shall be eligible for such appointment if the person, during the three (3) years prior to the appointment, has been employed by an investor-owned utility company of any kind or character whatsoever, or has held a federal, state or county office, elective or appointive."). The Policy also includes conflict of interest rules applicable to all State officers. For example, the Policy "prevents a Board member from owning any direct or indirect interest in any bond, obligation or security issued by or in the name of the Authority." Policy No. 2-4, § II(A). A similar provision applicable to all State officers is included in the State Ethics Commission Rules. See 74 O.S. 2001, ch. 62, app., 257:20-1-5. In addition to including the pertinent statutes and State Ethics Commission Rules applicable to board members, the Policy also includes other provisions specifically addressed to GRDA board members. See Policy No. 2-4, § II(A)(1)-(9). These conflict of interest policies do not apply to the Advisory Commission, which is not a subordinate unit of the GRDA and which does not possess any of the powers of government exercised by the GRDA board members. See 82 O.S.2001, §§ 861-895[82-861-895]; 63 O.S. 2001, § 4230.1[63-4230.1]. Advisory Commission members are not officers or directors of the GRDA.See 82 O.S. 2001, § 863A(A). There is nothing in the law creating the Advisory Commission that reflects legislative intent that Advisory Commission members are to be treated as officers and directors of the GRDA for purposes of the GRDA's conflict of interest policies.
¶ 5 Although the Advisory Commission members are not subject to the GRDA policy manual since the manual specifically applies only to GRDA officers and directors, we must also address whether any of the State Ethics Commission Rules included in the GRDA policy manual would independently apply to Advisory Commission members. State Ethics Commission Rules apply to "State officers," defined as an "elective, appointed or employed officer, including a public member, in the executive, judicial or legislative branch of the State of Oklahoma." 74 O.S. 2001, ch. 62, app., 257:1-1-2. "Public member" is defined as "a member appointed to a compensated or uncompensated part-time position on a board, commission, council, authority, bureau, committee, state beneficial public trust, or other establishment of the executive, legislative or judicial branch of the State of Oklahoma," but "(2) A public member does not include: (A) members of advisory bodies to the legislative, executive, or judicial branch of state government[.]" Id. This rule is consistent with the common law definition of "officer" in which all of the following three elements must be present: the position is created by law, definite duties are imposed by law on the incumbent, and the duties involve the exercise of some portion of the sovereign power. Robinson v. Bd. of County Comm'rs, 289 P.2d 668,670-71 (Okla. 1955); Oklahoma City v. Century Indem. Co.,62 P.2d 94, 97 (Okla. 1936).
¶ 6 The Advisory Commission does not possess any sovereign powers, but rather acts in an advisory capacity on matters pertaining to the lakes under the jurisdiction of the GRDA. 63O.S. 2001, § 4230.1[63-4230.1](A). The conclusion that Advisory Commission members are not State officers is also supported by the provision in Section 4230.1(B)(2) which prohibits members of the Legislature from serving on the Advisory Commission. If the Advisory Commission members were State officers, such a prohibition would not be necessary since the dual office holding provision in 51 O.S. 2001, § 6[51-6](A) prevents individuals from holding two State offices simultaneously. Advisory Commission members are neither State "officers" nor "public members" under the State Ethics Commission Rules. Therefore, members of the Advisory Commission are not State officers and are thus not subject to the Conflict of Interest and Business Ethics policy (including the State Ethics Commission Rules) adopted by the GRDA for its officers and directors.
 II. Grand River Dam Lakes Advisory Commission-Application Of The APA
¶ 7 You next ask whether the Advisory Commission is subject to Article I of the Administrative Procedures Act ("APA"), 75 O.S.2001 Supp. 2002, §§ 250-308.2. Article I of the APA governs rulemaking by State agencies. 75 O.S. 2001, § 250.1[75-250.1](A). "Agency" is defined as including "any constitutionally or statutorily created state board, bureau, commission, office, authority, public trust in which the state is a beneficiary, or interstate commission[.]"Id. § 250.3(3). The definition specifically excludes the Legislature and the courts. Id. The Advisory Commission is a statutorily created State commission and thus is an "agency" as defined by the APA. 63 O.S. 2001, §4230.1[63-4230.1](A).
¶ 8 Since the Advisory Commission falls under the APA's definition of "agency," it is necessary to determine whether the Advisory Commission has been delegated rulemaking authority. The APA applies to all State agencies with rulemaking authority. A primary purpose of the APA is "to provide a uniform system of regulations concerning administrative procedures in and before all state rule-making authorities." Grand River Dam Auth. v.State, 645 P.2d 1011, 1018 (Okla. 1982). "In creating agencies and designating their functions and purposes, the Legislature may delegate rulemaking authority to these agencies to facilitate administration of legislative policy." 75 O.S. 2001, §250.2[75-250.2](B). Unlike the GRDA, the Advisory Commission has not been delegated any rulemaking authority by the Legislature, either expressly or by implication. See 63 O.S. 2001, § 4230.1[63-4230.1].
Therefore, Article I of the APA is not applicable to the Advisory Commission. If the Legislature had delegated rulemaking authority to the Advisory Commission, then the Commission would be subject to Article I of the APA.
 III. Authority To Issue Dock Permits By The Board Of Directors Of The Grand River Dam Authority
¶ 9 You last ask whether the GRDA has the authority to waive its rule limiting the length of docks to 125 feet or one-third of the distance from the adjacent shoreline.[3] As a general rule, an "agency is bound by its own regulations." Jackson v.Scott, 18 P.3d 369, 372 (Okla. 2000). Therefore, the right to waive the provisions of a rule must be found either in the statutes or the regulations governing the agency. The GRDA's enumerated powers include:
 To prescribe and enforce rules for the use for recreational and commercial purposes of the lakes created by the district by impounding the waters of said lakes, and the shorelands of the district bordering thereon, including . . . prescribing the type, style, location and equipment of all wharves, docks and anchorages along the shores and upon the water of said lakes; the issuance of permits for wharfage, dock or anchorage privileges and charging fees for such commercial or private permits[.]
82 O.S. 2001, § 862[82-862](r).
¶ 10 The GRDA also has specific authority to prescribe the type, style and location of docks constructed for commercial purposes, as follows:
 A permit shall be procured for the construction of wharves, docks, landings and anchorages when constructed for commercial or rental purposes. For the issuance of such a permit the district shall charge a fee in an amount as specified by the district. The district shall prescribe the type, style and location and equipment of wharves, docks, anchorages and landings from which such boats operate and their rules of travel.
Id. § 875(C).
¶ 11 Thus, the GRDA's statutory authority with respect to docks includes the authority to issue permits for docks, and the authority to prescribe the type, style, location and equipment of all docks. The GRDA rules provide that no person, firm or corporation may construct, install, relocate or operate any dock, private or commercial, until a permit has been issued by the GRDA. Grand River Dam Auth., Rules and Regulations Governing the Use of Shorelands and Waters of the Grand River Dam Auth., art. IV, §§ 1-2 (2001) (hereinafter Rules and Regulations). Pursuant to its authority to prescribe the type, style, location and equipment of all wharves, docks and anchorages along the shores and upon the water of said lakes, the GRDA has specified a maximum length for docks in Article IV, as follows:
 7. Placement and Maintenance. Piers, wharves, landings, floating boat houses, docks, breakwaters and/or barges and other floating structures of a stationary or semi-stationary nature, commercial or private, extending into the lands and waters of GRDA, including all attachments, such as stiff-arms, spars, approaches, walkways, gangplanks and/or ramps, will be limited to a total maximum length, perpendicular to the shoreline, as hereinafter defined, of:
• 125 feet, or
 • One-third of the distance from the adjacent shoreline, measured across the land and water of GRDA, to the nearest opposite shoreline, whichever distance is less.
Id. art. IV, § 7.
¶ 12 In addition to the above rule applicable to permits for docks, the Rules and Regulations include general provisions relating to the issuance of permits, as follows:
 1. General Manager. The General Manager of the Grand River Dam Authority is authorized to administer these Rules and Regulations and to issue all permits and licenses provided for.
 2. The Board of Directors. The Board of Directors of the Grand River Dam Authority retains the right to authorize and issue any and all permits and licenses not specifically provided for in these Rules and Regulations. No fees, charges or any of these Rules and Regulations shall be changed in any manner without the approval of the Board of Directors.
 3. Administrative Decisions, Review — Appeal. Any person, firm or corporation directly affected by an administrative ruling or decision made under these Rules and Regulations may petition for review or appeal of such ruling or decision by filing a written request with the Board of Directors within ten (10) days after the effective date of the ruling or decision.
Id. art. IX (emphasis added).
¶ 13 Whether the GRDA has authority to waive the 125 foot or 1/3 rule requires construction of the GRDA's rules. Courts apply the rules of statutory construction to the construction of administrative rules. See Okla. Alcoholic Beverage Control Bd.v. Burris, 626 P.2d 1316, 1319 (Okla. 1980). Individual provisions are construed in conjunction with the whole act in light of its general purpose and objective. Burke v. Webb Boats,Inc., 37 P.3d 811, 814 (Okla. 2001). Relevant provisions must be considered together to give full force and effect to each.World Publ'g Co. v. Miller, 32 P.3d 829, 832 (Okla. 2001).
¶ 14 Article IX states that the General Manager may issue any permit provided for in the regulations, while the Board may issue any permit not specifically provided for in the regulations. Rules and Regulations, art. IX, §§ 1, 2. This provision is ambiguous in that it is susceptible to two interpretations. It may be interpreted to mean that the Board may issue any permit not specifically identified in the regulations, which would exclude permits for docks since such permits are identified, or it may be interpreted to mean that the Board may issue any permit that is not authorized by the regulations, which would include permits for docks that exceed the length specified in the regulations. "When more than one meaning may be attributed to the terms of a regulation, we look to the interpretation given to the regulation by those charged with the duty of executing it." Bellv. Phillips Petroleum Co., 641 P.2d 1115, 1121 (Okla. 1982). "When choosing between two or more possible meanings, controlling weight may be given to the long-continued administrative usage unless it is plainly erroneous or inconsistent with the language."Id. "Deference to an agency's interpretation is even more clearly in order when the construction is that of an administrative regulation rather than a statute." Id. at 1122.
¶ 15 The GRDA Board has approved requests by dock owners to build docks that exceed the maximum length established in its regulations.[4] The GRDA has interpreted its regulations to mean that the General Manger may issue a permit for a dock that does not exceed the maximum length set forth in Article IV, § 7 of GRDA's Rules and Regulations, but that the Board may waive the 125 foot or one-third rule and grant permits that exceed the dock length requirements specified in Article IV, § 7.[5] Under this interpretation of Article IX, the Board retains the discretion to issue a permit for a dock that exceeds the maximum length. This interpretation is not plainly erroneous or inconsistent with the regulatory language, and thus is entitled to controlling weight. See Bell, 641 P.2d at1121. See alsoUdall v. Tallman, 380 U.S. 1, 16 (1965) ("When the construction of an administrative regulation rather than a statute is in issue, deference [to the agency] is even more clearly in order.").
¶ 16 You also ask, assuming the Board has the authority to grant waivers to the maximum length regulation, under what circumstances may the waivers be granted, and with what, if any, restrictions. The Board has the discretion to determine under what circumstances and restrictions it will grant permits that exceed the maximum length specified in Article IV, § 7 of the GRDA's Rules and Regulations. The discretion of an administrative body may not be exercised in a discriminatory manner and must have a reasonable or rational basis. Hennessey v. Indep. Sch.Dist. No. 4, 552 P.2d 1141, 1145 (Okla. 1976). In the exercise of discretion, governing boards are held to the arbitrary and capricious standard. Nixon v. Roberts, 420 P.2d 898, 903-04
(Okla. 1966).
¶ 17 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. Members of the Grand River Dam Lakes Advisory Commission are not subject to the Conflict of Interest and Business Ethics policy adopted by the Board of Directors of the Grand River Dam Authority for its officers and directors. See 82 O.S. 2001, §§ 861[82-861] -895; 63 O.S. 2001, § 4230.1[63-4230.1]. The Advisory Commission is a separate legal entity from the GRDA and does not possess the powers of government exercised by the GRDA. Id. Advisory Commission members are not State officers and are not officers or directors of the GRDA. Id.
 2. The Grand River Dam Lakes Advisory Commission has not been delegated rulemaking power by the Legislature and thus is not subject to Article I of the Administrative Procedures Act, 75 O.S. 2001 Supp. 2002, §§ 250-308.2, which specifies rulemaking procedures for State agencies. See 63 O.S. 2001, § 4230.1[63-4230.1].
 3 The Board of Directors of the Grand River Dam Authority has the discretionary authority to grant permits for docks that exceed the length specified in Article IV, § 7 of the Grand River Dam Authority's Rules and Regulations Governing the Use of Shorelands and Waters of the Grand River Dam Authority by virtue of Article IX, § 2, which authorizes the Board of Directors to issue permits not otherwise provided for in the regulations. The Board's exercise of discretion must not be arbitrary or capricious.
 W.A. DREW EDMONDSON Attorney General of Oklahoma
 KATHRYN BASS Assistant Attorney General
[1] The Oklahoma Legislature passed Senate Bill 408 repealing Section 863A and replaced it with a new section of law to be codified at 82 O.S. Supp. 2003, § 863.1[82-863.1]. 2003 Okla. Sess. Laws ch. ___, §§ 3, 13. This bill was signed by the Governor on June 6, 2003, and will become effective August 28, 2003.
[2] This section was repealed by Senate Bill 408, 2003 Okla. Sess. Laws ch. ___, § 12. Thus, the Advisory Commission will no longer exist as of the effective date of the repealer, which is August 28, 2003.
[3] It should be noted this Office recently determined the GRDA was subject to Article I of the APA. See A.G. Opin. 02-44. The regulations addressed herein were promulgated prior to the Opinion and thus were not adopted pursuant to the APA. Recently enacted Senate Bill 408 provides that the GRDA is to "[p]romulgate appropriate rules governing operations of the agency pursuant to the provisions of Article I of the Administrative Procedures Act, with the exception of rules dealing with the waters of the Grand River and its tributaries[.]" 2003 Okla. Sess. Laws ch. ___, § 1 (to be codified at 82 O.S. Supp. 2003, § 861A). Senate Bill 408 also provides, "By majority vote, the Board shall have the authority to grant exemptions from any rules not promulgated pursuant to the Administrative Procedures Act which deal with the waters of the Grand River and its tributaries." Id. § 3 (to be codified at82 O.S. Supp. 2003, § 863.1[82-863.1]). As this law will become effective on August 28, 2003, your question will be answered in accordance with the current statutes.
[4] See letter from Robert A. Nance, Attorney, attached to a letter from Allen Pease, General Counsel, Grand River Dam Authority, to Assistant Attorney General of Oklahoma Kathryn Bass (Apr. 10, 2003) (on file with the Attorney General's Office).
[5] Id.